## John Lynch v. J. H. McGown.

### Decided June 21, 1905.

**Homestead—Abandonment—Intention to Return—Charge.**

Where the owner of land levied on under execution asserted a homestead right thereto and the evidence showed that prior to the levy he had bought another place, removed to it, lived on it for several years and was living there at the time of the levy, a charge that where a homestead is once acquired a removal to another tract and purchase thereof will not of itself deprive the party of his homestead rights in the first tract, "provided he intended in such removal to occupy the second place only temporarily, and intended to return to the first place," was erroneous in that it made the question of abandonment depend on the intention at the time of removal, instead of an intention to return which then existed and continued to exist thereafter.

Appeal from the District Court of Sabine. Tried below before Hon. Tom C. Davis.

*Goodrich & Synnott,* for appellant.—The court erred in its charge to the jury in charging in words as follows: "Where a homestead is once acquired upon land, a removal therefrom to another tract of land in a town and purchase of such other tract will not of itself deprive him of his homestead rights in the first tract, provided he intended in such removal to occupy the second place only temporarily and intended to return to the first place," said charge being upon the weight of the evidence in that it singles out important facts introduced in evidence and tells the jury that they do not constitute abandonment and also because it makes the question of abandonment depend alone upon plaintiff's intention at the very time of his removal, instead of making it depend upon whether or not his intention to return to the first tract of land in controversy existed at the time of such removal, at the date of the levy of the execution and at all times intervening. Rev. Stats., art. 1317; White v. Epperson, 73 S. W. Rep., 852; Burcham v. Gann, 1 Posey U. C., 343; Mayo v. Tudor's Heirs, 12 S. W. Rep., 118; Dawson v. Sparks, 1 Posey U. C., 758; Missouri, K. & T. Ry. Co. v. Baker, 58 S. W. Rep., 966; Frieberg v. Frieberg, 74 Texas, 126; San Antonio & A. P. Ry. Co. v. Vaughn, 5 Texas Civ. App., 201; Bering v. First National Bank, 69 Texas, 599; Stude v. Saunders, 2 Posey U. C., 124; Chamblee v. Tarbox, 27 Texas, 146.

PLEASANTS, Associate Justice.—This is a suit for injunction brought by appellee to restrain the sale of a tract of sixty acres of land, a part of J. I. Pifermo grant in Sabine County, claimed by him to be his homestead. The land was levied on by the sheriff of Sabine County under an execution issued upon a judgment in favor of appellant against the appellee rendered in a Justice Court of San Augustine County, and to restrain the sale under this levy this suit was instituted.

Plaintiff's amended petition alleges in substance that he is the head of a family, and that long prior to October 27, 1903, the date of the levy of the execution, he had established his homestead on the land in controversy; that for many years he resided on said land and that it

has continued to be his homestead to the present time and has at no time been abandoned as such, but on the contrary he has for the past ten years continuously asserted homestead rights in the premises and has never claimed such rights in any other land; that prior to October 27, 1903, he, together with his said family, for business purposes, and with the intention to return to and occupy said sixty acres of land as their homestead, and with no intention whatever to abandon it, or to relinquish the homestead rights therein, did temporarily remove therefrom and did temporarily occupy another and different residence, and since that time and up to the present time have so continued to reside at another and different place, but intending to return to said tract and reoccupy the same; in the meantime using said sixty acres of land for the benefit of the family, and at no time ceasing to claim said tract of land as a homestead; that notwithstanding these facts the defendant, John Lynch, has caused said property to be levied upon and advertised for sale under an execution issued upon a judgment in favor of said defendant against plaintiff rendered in a Justice Court of San Augustine County.

The prayer of the petition is for an injunction restraining the sale of the property.

In reply to plaintiff's first amended original petition defendant filed his first supplemental answer, in which, *inter alia,* he excepted specially to plaintiff's first amended original petition in that it did not allege sufficient facts to prove the land in controversy plaintiff's homestead at the date of the levy; that it did not deny that since his removal from the tract of land in controversy he had acquired another homestead and acquired title to another tract of land and established his homestead thereon; that it did not allege that since his removal from said land he had continued to use the same for a home. Defendant answered further, among other things, that at the date of the levy plaintiff had acquired a homestead in the town of Hemphill on lands owned by him, to which he had acquired a title before he did to the land in controversy, and that he never resided on the land in controversy after acquiring title thereto.

Upon the trial of the case in the court below defendant's exceptions to the petition were sustained and plaintiff was granted leave to file a trial amendment and on his verbal statement of what said amendment would contain the court allowed the trial to proceed with the understanding that the written amendment would be filed thereafter. This amendment was not filed until after the trial had been concluded. The trial resulted in a verdict and judgment in favor of plaintiff.

The only evidence adduced upon the issue of homestead was the testimony of plaintiff, which is as follows: "I was born and have always lived in Sabine County, Texas. I am a married man and have a family. I have been married three times. I was married first in 18— and had one child by my first wife. My first wife died in 18—. I married my second wife in 1886. She died about 1898. I have several children by her still living. During my first wife's lifetime my father gave me the sixty acres of land in controversy in this suit. I moved ·on it and made it my home until after my second wife's death and until my oldest daughter married in 18—. After my second wife died

I continued to live on the sixty acres with my childen until my oldest daughter married, after which I broke up housekeeping and sent some of my children to live with my parents and one, the baby, was taken by Mr. Coussons. I then went away from the place and taught school. Part of the time I taught school in Angelina County, and part of the time in Sabine County. I boarded while I taught school. In the spring of 1899 I returned to the land in controversy and made a crop on it. In the fall of 1899 I taught school again and boarded while I taught school. In the spring of 1900 I went to Hemphill to study law and later was admitted to the bar and have been a practicing attorney ever since. While I was studying law, and for awhile after I began practicing up to the time of my marriage with my present wife, I boarded in the town of Hemphill. After the death of my second wife and the marriage of my oldest daughter I have rented the land in controversy, except the one year I cultivated it myself in 1899. In 1901 I married my present wife, and in September, 1901, I purchased a place in Hemphill, being block No. 26, on which there was a residence and other outhouses, from Dr. Harrison, and I immediately moved into the residence with my family. I resided on block No. 26, in the town of Hemphill, with my family continuously from the time I moved on it in 1901, until I sold it in 1904. I was living on this place when the execution was levied upon the sixty acres of land in controversy in this suit. I bought the place from Dr. Harrison and paid him $10 cash, and gave vendor's lien notes for the balance. I paid something on the notes. There was a balance due on one of the notes when I sold this place. I sold the place to L. Low, I think in January, 1904. The notes were not fully paid when the execution was levied on the sixty acres of land in controversy in this suit. Low paid me some money for the place and assumed the payment of the balance due on the note I gave for it when I bought it. I lived on this place at the date of the levy of the execution on the land in controversy in this suit, and I sold the place, block No. 26 in Hemphill, to L. Low after the levy of the execution on the sixty acres of land in controversy. I occupied the place in Hemphill, block No. 26, as a home and called it my home, but I always asserted homestead rights in the land in controversy, and not in block No. 26. When I moved away from the sixty acres in controversy I did not intend to abandon it as my homestead, but intended to return to it, and have never intended to abandon it as such, but I have never lived on it as a home since the marriage of my oldest daughter, except the one year I cultivated it, in 1899, but I have kept it rented out. I have never asserted homestead rights in any other tract of land. When the levy of the execution was made on the sixty acres of land I was just recovering from a spell of typhoid fever, and I then intended to return to the land in controversy and I then claimed it as my homestead. I think it is my intention now to return to it. I have always considered it as my homestead. When my father gave me this land he did not deed it to me, but he made me a deed later. I have been living in Hemphill ever since I sold my place to L. Low. I have not lived on the land in controversy since the levy of the execution on it."

Appellant's first assignment of error is as follows: "The court erred in its charge to the jury in charging in words as follows: 'Where

a homestead is once acquired upon land, a removal therefrom to another tract of land in a town and purchase of such other tract will not of itself deprive him of his homestead rights in the first tract, provided he intended in such removal to occupy the second place only temporarily and intended to return to the first place,' said charge being upon the weight of the evidence in that it singles out important facts introduced in evidence and tells the jury that they do not constitute abandonment, and also because it makes the question of abandonment depend alone upon plaintiff's intention at the very time of his removal, instead of making it depend upon whether or not his intention to return to the first tract of land in controversy existed at the time of such removal, at the date of the levy of the execution and at all times intervening."

We think the assignment should be sustained. The charge is misleading in that the jury might have understood therefrom that if the plaintiff did not intend, when he moved upon the place in Hemphill, to abandon his homestead upon the property in controversy, it continued to be his homestead notwithstanding the fact that he had lived with his family for a number of years upon the property which he purchased in the town of Hemphill, and may not have had at all times a fixed intention to return to the property in controversy. The indefinite and somewhat contradictory testimony of the plaintiff as to his continuing intention, after he established his home in Hemphill, of returning to and making his permanent home upon the land in controversy, rendered this inaccuracy in the charge specially harmful to the defendant and requires a reversal of the judgment. Schwartzman v. Cabell, 49 S. W. Rep., 115; White v. Epperson, 73 Texas Civ. App., 161, 73 S. W. Rep., 852.

It is unnecessary for us to pass upon the other assignments of error presented by appellant. Other portions of the charge complained of under appropriate assignments contain the same error above pointed out, and to that extent said assignments are sustained. If any further error is shown by any of the remaining assignments it is not such as is likely to occur upon another trial of the case.

Because of the errors in the charge the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*